## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISION

PAYPAL, INC.

          Plaintiff,

   v.

RETAILMENOT, INC.,

        Defendant.

Civil Action No.: 6:20-cv-339

**JURY TRIAL DEMANDED**

## PAYPAL'S COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff PayPal, Inc. ("PayPal" or "Plaintiff") files this Complaint seeking relief for patent infringement by RetailMeNot, Inc. ("RetailMeNot" or "Defendant").  PayPal states and alleges the following:

## PRELIMINARY STATEMENT

1.     PayPal has built a leading technology platform that enables digital and mobile payments on behalf of consumers and merchants worldwide. The core of PayPal's value proposition seeks to empower people everywhere by democratizing the management and movement of money.  PayPal's payments platform, open application programming interfaces, and tools are designed to enable merchants, partners, and developers to offer robust applications to a global ecosystem of merchants and consumers, while at the same time maintaining the safety and security of financial information.  As a result, consumers and merchants have responded by trusting PayPal to be at the center of their financial lives and embracing the PayPal payments platform in massive numbers.

2.     PayPal is compelled to bring this complaint, even as the world navigates through the evolving challenges of the pandemic, to stop RetailMeNot from continuing its wrongful and unauthorized use of PayPal's patented technology.  PayPal brings this suit in the District home to

RetailMeNot's headquarters, both to address this unauthorized use, and to protect PayPal's longstanding investment in innovative technologies.

3.      The parties are no strangers to one another.  RetailMeNot has known about PayPal's technology for years, and in fact relied on PayPal in the past in its own business as a way for RetailMeNot customers to redeem rewards in connection with RetailMeNot's coupon- and promotion-based business model.  Unfortunately, RetailMeNot was not content to simply enjoy the benefits of PayPal's technology as a customer.  Instead, it infringed on PayPal's patented technology, without seeking or obtaining permission.  Past relationship or not, PayPal cannot sit idly by while RetailMeNot passes off PayPal's technology as its own.

4.      PayPal's success rests on technical innovation, both homegrown and strategically acquired.  Most recently, PayPal acquired a company called Honey Science Corp., an acquisition that complements PayPal's financial technology platform with Honey's online value aggregation platform, thereby providing a myriad of benefits to current and future PayPal and Honey customers.

5.      RetailMeNot is currently pursuing a patent infringement lawsuit against Honey in Delaware.  Honey is defending itself in that separate suit, including by pursuit of a counterclaim for infringement against RetailMeNot.  The Delaware litigation involves separate patents from those presented here.  PayPal brings this case to protect its innovation and RetailMeNot's unauthorized use of PayPal's patented technologies.

6.      PayPal is a pioneer in electronic payments supporting e-commerce, and has been around for over 20 years.  As a result, PayPal has amassed more than 1,600 issued United States Patents, and is commencing this lawsuit by asserting seven of its patents.  Broadly speaking, RetailMeNot's core technology is infringing the asserted PayPal patents, which cover building

blocks of e-commerce.  For example, the patents are directed to key technical aspects of a user's experience, such as geofencing (which can affect a user's experience depending on the user's location), prefetching of data (which can serve to make the user's experience faster and smoother), and management of promotions (which can tailor coupons and discounts for a user).  Each of these features is critical to RetailMeNot's publicized user experience, and each is covered by a PayPal patent that RetailMeNot infringes.  There may be additional PayPal patents that RetailMeNot infringes, and PayPal's investigation is ongoing in this regard.

7.     Accordingly, PayPal seeks in this action, among other things, monetary damages for RetailMeNot's infringement, as well as a judicial order stopping such infringement.

## **NATURE OF THE ACTION**

8.     This is an action under the Patent Laws of the United States, 35 U.S.C. §§1, *et seq*., for infringement by RetailMeNot of one or more claims of U.S. Patent Nos. 9,654,923, 8,909,248, 7,659,905, 6,917,961, 7,693,937, 9,053,514, and 9,082,153 (collectively referred to as the "Patents-in-Suit").

## **THE PARTIES**

9.     Plaintiff PayPal is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 2211 North First Street, San Jose, California. Additionally, PayPal has a place of business—a technology development center—at 7700 West Parmer Lane, Austin, Texas, in this District, where it employs more than 300 hundred people, performing a variety of activities including engineering.  This presence in the local communities of this District dates back more than a decade.

10.     On information and belief, Defendant RetailMeNot is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business located in this District at 301 Congress Avenue, Suite 700, Austin, Texas.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338.

12.     This is the most appropriate Judicial District for this dispute.  This Court has general personal jurisdiction over RetailMeNot because RetailMeNot is engaged in substantial and not isolated activity in and has a regular and established place of business within this District, which, on information and belief, serves as RetailMeNot's headquarters.

13.     On information and belief, RetailMeNot's Austin location is home to its executive leadership and is its decision-making hub. Indeed, on information and belief, RetailMeNot's earliest corporate incarnation, WhaleShark Media, was founded in Austin in June 2010, backed in part by Austin-based Austin Ventures.  As such, while RetailMeNot's relationship with this District has been shorter than that of PayPal's, RetailMeNot has been actively engaged in various businesses in this District for almost a decade.

14.     This Court has specific personal jurisdiction over RetailMeNot because RetailMeNot has committed and continues to commit acts of patent infringement in this Judicial District giving rise to this action, including making, using, offering to sell, selling, and/or importing accused products into this Judicial District, including by Internet sales, and/or inducing others to commit acts of patent infringement in this Judicial District, and has established more than minimum contacts within this Judicial District, such that the exercise of jurisdiction over RetailMeNot would not offend traditional notions of fair play and substantial justice.

15.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b) because, *inter alia*, upon information and belief, RetailMeNot has a regular and established place of business within this District.  Again, on information and belief, RetailMeNot is and has been firmly rooted in this District for many years, employs hundreds of people in this District, and is actively engaged in business in this District.  RetailMeNot has done and continues to do business in this District, including regularly doing and/or soliciting business and engaging in other persistent courses of conduct, operating infringing systems in infringing ways, and/or deriving substantial revenue from products and services provided from this Judicial District.

16.     Although, on information and belief, today's RetailMeNot did not originally develop the retailmenot.com website—which was an established website and business purchased from its Australian founders in 2010—the company nevertheless anchored its activities in this District.  On information and belief, RetailMeNot was a publicly traded company in 2013 and then purchased by private equity around 2017.  While it was publicly traded, RetailMeNot had its headquarters in this District.  Although it is no longer a publicly traded company, RetailMeNot commits and has committed acts of patent infringement in this Judicial District, including making, using, offering to sell, selling, and/or importing accused products into this District, including by Internet sales, and/or inducing others to commit acts of patent infringement in this Judicial District.

## **PATENTS-IN-SUIT**

17.     On May 16, 2017, United States Patent No. 9,654,923 ("the '923 Patent"), entitled "Location-Based Services," was duly and legally issued by the United States Patent and Trademark Office from U.S. Patent Application Serial No. 14,534,797, filed on November 6, 2014. PayPal is the owner, by valid assignment, of the entire right, title and interest in and to the '923 Patent,

including the right to assert all causes of action arising under the patent and the right to any remedies for infringement of the patent.

18.     On December 9, 2014, United States Patent No. 8,909,248 ("the '248 Patent"), entitled "Location-Based Services," was duly and legally issued by the United States Patent and Trademark Office from U.S. Patent Application Serial No. 13/361,113, filed on June 30, 2012. PayPal is the owner, by valid assignment, of the entire right, title and interest in and to the '248 Patent, including the right to assert all causes of action arising under the patent and the right to any remedies for infringement of the patent.

19.     On February 9, 2010, United States Patent No. 7,659,905 ("the '905 Patent"), entitled "Method and System to Pre-fetch Data in a Network," was duly and legally issued by the United States Patent and Trademark Office from U.S. Patent Application Serial No. 11/359,859, filed on February 22, 2006. PayPal is the owner, by valid assignment, of the entire right, title and interest in and to the '905 Patent, including the right to assert all causes of action arising under the patent and the right to any remedies for infringement of the patent.

20.     On July 12, 2005, United States Patent No. 6,917,961 ("the '961 Patent"), entitled "Evolving Interactive Dialog Box for an Internet Web Page," was duly and legally issued by the United States Patent and Trademark Office from U.S. Patent Application Serial No. 09/824,648, filed on April 4, 2001.  PayPal is the owner, by valid assignment, of the entire right, title and interest in and to the '961 Patent, including the right to assert all causes of action arising under the patent and the right to any remedies for infringement of the patent.

21.     On April 6, 2010, United States Patent No. 7,693,937 ("the '937 Patent"), entitled "System and Method for Modifying Display Components in an Internet Web Page Without Changing the Remainder of the Web Page," was duly and legally issued by the United States Patent

and Trademark Office from U.S. Patent Application Serial No. 11/393,398, filed on March 30, 2006. PayPal is the owner, by valid assignment, of the entire right, title and interest in and to the '937 Patent, including the right to assert all causes of action arising under the patent and the right to any remedies for infringement of the patent.

22.     On June 9, 2015, United States Patent No. 9,053,514 ("the '514 Patent"), entitled "System Supporting Promotion Browsing and Searching," was duly and legally issued by the United States Patent and Trademark Office from U.S. Patent Application Serial No. 13/400,466, filed on February 20, 2012.  PayPal is the owner, by valid assignment, of the entire right, title and interest in and to the '514 Patent, including the right to assert all causes of action arising under the patent and the right to any remedies for infringement of the patent.

23.     On July 14, 2015, United States Patent No. 9,082,153 ("the '153 Patent"), entitled "Web Search and Promotion Search Engine Integration," was duly and legally issued by the United States Patent and Trademark Office from U.S. Patent Application Serial No. 13/400,439, filed on February 20, 2012.  PayPal is the owner, by valid assignment, of the entire right, title and interest in and to the '153 Patent, including the right to assert all causes of action arising under the patent and the right to any remedies for infringement of the patent.

## FACTUAL ALLEGATIONS

### PayPal: Champion of Innovation

24.     PayPal's origins date back to 1998 when it was first established as Confinity Inc. Confinity merged with X.com in 2000, and was renamed PayPal in 2001 and went public in 2002. At the heart of PayPal's continued success is its culture of innovation.  In fact, today, innovation is one of its corporate values.  In its early years, e-commerce was a burgeoning technological and commercial field.  Both merchants and consumers needed platforms that provided simplicity,

security, flexibility, and competitive edge.  PayPal delivered on all fronts.  By the early 2000s, more than 70 percent of all auction listings on third party site www.eBay.com accepted PayPal payments, and approximately 25 percent of closed auction listings were transacted via PayPal. PayPal became the default payment method used by the majority of eBay users.

25.     Through a combination of technological innovation, mergers and acquisitions, and strategic partnerships, PayPal has continued to create better ways to securely manage and move money, and offer choice and flexibility when sending payments, paying, or being paid.  As PayPal became ubiquitous with a new economy in which many consumers increasingly rely on digital payments, PayPal protected its innovation and customers through continued investment in and protection of its intellectual property.

26.     Since the early 2000s, mobile technology has gained increasing prominence as consumers look to their mobile devices to facilitate every aspect of their lives, including using the devices to shop for everything from clothes and household goods to food, travel and other services and to pay for and facilitate all of those transactions.  It continues to gain global importance in the midst of the current pandemic situation.  Looking forward to 2021, smartphone retail e-commerce sales in the United States are projected to surpass $345 billion, up from $148 billion in 2018, and the number of proximity mobile payment transaction users in the United States is projected to reach 74.9 million users by 2022.  *See* J. Clement, "Mobile commerce in the United States - Statistics & Facts" (Sept. 10, 2019), *available at*: https://www.statista.com/topics/1185/mobile-commerce/ (last accessed April 17, 2020).  Businesses, as a result, are racing to develop technology and advanced mobile applications to assist their customers in making these mobile transactions.

27.     To address its customers' growing preferences, PayPal has expended significant resources and efforts on its mobile platform. In line with PayPal's customer focus, PayPal has

worked diligently to enable customers to make mobile payments that are secure, efficient, and easy to use. It has conducted in-depth research to understand its customers' preferences and regularly updates its mobile app to meet all of these criteria.  These constant investments in innovation have reaped success.

28.     As of December 31, 2019, PayPal had 305 million active customer accounts in over 200 markets around the world.  PayPal offers its customers the flexibility to use their accounts to purchase and receive payment for goods and services, as well as the ability to transfer and withdraw funds. PayPal enables consumers to exchange funds more safely with merchants using a variety of funding sources, and the PayPal, Venmo, and Xoom products make it safer and simpler for friends and family to transfer funds to each other.  PayPal offers merchants an end-to-end payments solution that provides authorization and settlement capabilities, as well as instant access to funds.  PayPal helps merchants connect with their customers and manage risk, and enables consumers to engage in cross-border shopping and merchants to extend their global reach while reducing the complexity and friction involved in enabling overseas and cross-border trade.

29.     PayPal is committed to expanding its value proposition for merchants and consumers. To build a comprehensive global platform, reaching new international markets and focusing on innovation both in the digital and physical world, when appropriate, PayPal has also enhanced its platforms for users through acquisitions and strategic partnerships with other innovators.  For example, in 2005, PayPal acquired VeriSign's Payment Gateway Business to provide added security support.  In November 2008, the company acquired Bill Me Later, an online transactional credit company.  In 2013, PayPal acquired Braintree, an innovative global payments platform, and the Venmo peer-to-peer money transfer service.  To strengthen PayPal's international offerings, PayPal has made additional acquisitions, including Xoom Corporation, a

digital money transfer company, in November 2015, and iZettle, a small business commerce platform in Europe and Latin America, in September 2018.  PayPal also acquired Austin-based Hyperwallet, a platform that enables payouts to sellers and merchants, in 2018.  Most recently, in January 2020, PayPal acquired Honey Science Corp.  In all, PayPal has made over 20 acquisitions, each with eye toward harnessing and nurturing technical innovation and customer adoption and use.

30.     PayPal is committed to democratizing financial services and empowering people and businesses to join and thrive in the global economy.  Unfortunately, with success comes imitation, and PayPal must rely on its intellectual property to protect its innovation and creativity.  PayPal's recent Annual Report noted that "[t]he protection of our intellectual property, including our trademarks, patents, copyrights, domain names, trade dress, and trade secrets, is important to the success of our business."  For this reason, PayPal respects the intellectual property of others, and expects others to respect PayPal's.  PayPal is, at times, forced to further these commitments through litigation, and such is the situation here.

## RetailMeNot's Infringing Products and Services

31.     Upon information and belief, RetailMeNot was founded in 2006 in Australia, and acquired by Whaleshark Media in 2010.  Whaleshark Media eventually acquired the already established coupon site retailmenot.com from Australia, and changed its name in 2013 to RetailMeNot.  RetailMeNot is a sizable company in its own right, with business locations worldwide, hundreds of employees, multiple acquisitions of other companies, and an IPO that netted hundreds of millions of dollars.

32.     RetailMeNot is in the business of aggregating digital offers (*e.g.*, digital coupon codes, discounts, rebates, and cash back offers) on its websites, through its mobile applications,

and through its browser extension software offerings, thereby enabling its users to use those digital offers at online and point-of-sale retailers.

33.     In violation of PayPal's asserted patents, RetailMeNot operates a website at www.retailmenot.com (the "RetailMeNot Website"), as well as a RetailMeNot application accessible via smartphones (the "RetailMeNot Mobile Application"), and RetailMeNot Deal Finder, also known as Genie, a Google Chrome/Mozilla Firefox browser extension (the "RetailMeNot Browser Extension").

34.     For all three products—the RetailMeNot Website, the RetailMeNot Mobile Application, and the RetailMeNot Browser Extension—RetailMeNot provides a backend system that aggregates promotion codes and offers to support these offerings.  RetailMeNot provides interfaces for merchants and individual users to submit promotional information to RetailMeNot, and also utilizes aggregation sites that gather promotions from various retailer websites. RetailMeNot converts this promotion data to a uniform format stored on its servers so that users may search for, locate, and or use various promotions from any of its three product offerings.

35.     The RetailMeNot Website aggregates retailer promotions, collected and submitted by merchants and consumers, as well as those obtained by third party affiliate networks. RetailMeNot makes those promotions available to consumers in the form of coupon codes, offers, cash back, and other promotions.  *See* www.retailmenot.com (last accessed April 17, 2020).



36.     The RetailMeNot Website enables users to search and browse for promotions, for example, by selecting a particular category of a good or service such as accessories, automotive, beauty, clothing, electronics, food, furniture, gifts, shoes, or travel.  Users can alternatively submit a text query for a specific merchant or product to locate deals specific to that merchant or product category.  The user is then able to pull up relevant coupon codes and promotions related to the specific merchant or category, respectively.

37.     The RetailMeNot Website is further configured to provide location-based services, through its "Near Me" feature that provides a user promotions based on a geographic location. Promotions that are proximate to a user-submitted geographic location or a geographic location corresponding to a current location of a user's device are displayed to a user in a map interface

and list interface on the RetailMeNot Website. *See, e.g.*, https://www.retailmenot.com/near-me?lat=40.7700703&latLongDisplay=10021&lng=-73.9580246 (last accessed April 17, 2020).



38.     The RetailMeNot Website also provides opportunities for users to input an email address or phone number to gain access to various functionality and RetailMeNot content. For example, a user may input an email address or phone number to share a specific promotion. *See* https://www.retailmenot.com/view/acehardware.com?u=SGKVPHTRENGURMM76UFFXCZGS4 (last accessed April 17, 2020).



39.     In another example, the RetailMeNot Website directs a user to enter a phone number so that a link to download the RetailMeNot Mobile Application can be sent to a user's mobile device.  *See* www.retailmenot.com (last accessed April 17, 2020).



40.     In yet another example, the RetailMeNot Website directs a user to enter an email address in order to enroll in a "Cash Back" promotion.   *See* https://www.retailmenot.com/cashback?u=RMGKBNRIJVGPLNVG6BGLNJNKQQ (last accessed April 17, 2020).



41.     RetailMeNot also offers the RetailMeNot Mobile Application for download and use on mobile devices running the iOS or Android operating systems.  The RetailMeNot Mobile Application provides another mechanism for consumers to take advantage of RetailMeNot's promotions.  Similar to the RetailMeNot Website, users can browse and search for promotions and coupon codes by category or merchant using the RetailMeNot Mobile Application's interface.

42.     The RetailMeNot Mobile Application is also configured to provide location-based services, such as promotions for merchants identified as proximate to the location of a user's mobile device.  *See*, *e.g.*, https://www.retailmenot.com/corp/solutions/ (last accessed April 17, 2020).





43.    On information and belief, the RetailMeNot Mobile Application has been configured to provide a "Near Me" feature that provides promotions to a user based on a geographic location since at least November 2019.  Promotions that are proximate to a user-submitted geographic location or a geographic location corresponding to a current location of a user's device are displayed to a user in a map interface and list interface on the RetailMeNot Mobile Application.



44.    The RetailMeNot Browser Extension is a downloadable Chrome/Mozilla Firefox browser extension that applies promotion/coupon codes and cash back offers to purchases made on a retailer's website.   The RetailMeNot Browser Extension tests applicable discounts and combines promotional codes with cash back offers. The RetailMeNot Browser Extension is intended to allow users to implement promotions at the time they are needed without the user having to search for the promotion codes themselves. *See* https://www.retailmenot.com/dealfinder/ ?utm_campaign=explore_menu (last accessed April 17, 2020).



45.     The RetailMeNot Browser Extension is configured to detect an online retailer's website and to identify any promotions available for that retailer.  When a user navigates to the online retailer's page where promotional codes can be input, the RetailMeNot Browser Extension notifies the user of the availability of the promotions.  Through a single click, the RetailMeNot Browser Extension tests promotion codes in the retailer's website to identify the best promotion for the user's order.

46.     Using features such as the above, several of which infringe PayPal's patents, RetailMeNot unfairly competes with the Honey platform and, therefore, with PayPal.

## COUNT ONE:  INFRINGEMENT OF U.S. PATENT NO. 9,654,923

47.     Plaintiff hereby incorporates by reference its allegations contained in paragraphs 1 through 46 of this Complaint as though fully set forth herein.

48.     Upon information and belief, RetailMeNot has infringed and continues to infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '923 Patent pursuant to 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling in the United States, and/or importing into the United States, at least the Accused Products.  Upon information and belief, RetailMeNot's infringement pursuant to 35 U.S.C. § 271(a) is ongoing.

49.     For example, on information and belief, RetailMeNot's Website and Mobile Application, used by RetailMeNot and/or sold and offered for sale by RetailMeNot, infringe claim 1 of the '923 Patent; this claim recites:

> A computer-implemented method executing on a mobile device, the method comprising:
>
> executing an application at the mobile device, the application causing display of a user interface at the mobile device;
>
> receiving, electronically over a network on the mobile device, data defining a geofence;
>
> monitoring, via sensors on the mobile device, a current location of the mobile device; and
>
> comparing the current location of the mobile device with boundaries of the geofence;
>
> determining, based on the comparing, that the current location of the mobile device is within the geofence; and
>
> in accordance with determining that the current location is within the geofence, altering a state of the application on the mobile device, wherein the altering the state of the application includes adding a user-interface element to the user interface, the user interface element unavailable outside of the geofence, the application stored in memory on the mobile device and executable on the mobile device.

50.     On information and belief, RetailMeNot's Mobile Application and Website executing on a mobile device are configured to cause display of a user interface at a mobile device, to receive data defining a geofence electronically over a network, and to monitor a current location of the mobile device via sensors on the mobile device.  Based on comparing the current location of the mobile device with boundaries of the geofence, the current location of the mobile device is

determined to be within the geofence.  In accordance with determining that he current location of the mobile device is within the geofence, a state of the Mobile Application and Website executing on the mobile device is altered, including the addition of a user-interface element to the user interface displayed at the mobile device, the user interface element being unavailable outside of the geofence.  For example, upon information and belief, the RetailMeNot Mobile Application is configured to output location-based notifications, each notification being associated with a geographic area in which it is available for output at a user interface displayed by the Mobile Application, and being unavailable outside of that geographic area.   *See*, *e.g.*, https://www.retailmenot.com/corp/solutions/ (last accessed April 17, 2020).





51.    Furthermore, upon information and belief, RetailMeNot's Website includes a "Near Me" feature configured to display interface elements for merchants and/or promotions associated with geographic locations within a specified geographic area, the interface elements being unavailable outside of the specified geographic area. *See, e.g.,* https://www.retailmenot.com/near-me (last accessed April 17, 2020).



52.     Furthermore, on information and belief, RetailMeNot has induced infringement of the aforementioned claims of the '923 Patent pursuant to 35 U.S.C. § 271(b), by actively and knowingly inducing, directing, causing, and encouraging others, including, but not limited to, their affiliates, merchant customers, consumer end users, and/or software developers, to directly infringe the '923 Patent through making, using, selling, and/or offering to sell in the United States, and/or importing into the United States, RetailMeNot's Accused Products, with the specific intent to encourage such infringement, and knowing that the induced acts constitute patent infringement. RetailMeNot's inducement includes, among other things, providing instructions, manuals, and technical assistance relating to the installation, use, sign up, set up, operation, maintenance, and other support of RetailMeNot's Accused Products that induce its affiliates, merchant customers, consumer end users, and/or software developers to directly infringe the '923 Patent.  RetailMeNot also induces acts of infringement through its social media pages, such as on Instagram, Facebook, Twitter, and Pinterest. RetailMeNot has actual knowledge of the '923 Patent at least as of service

of this Complaint.  Upon information and belief, RetailMeNot's inducement of infringement pursuant to 35 U.S.C. § 271(b) is ongoing.

53.     RetailMeNot has committed the foregoing infringing activities without license from PayPal and, upon information and belief, with notice of the '923 Patent, including through virtual marking (*see*  https://www.paypal.com/us/webapps/mpp/ua/patent-page  (last accessed April 17, 2020)) related to PayPal products or services that use or used the technology claimed in the '923 Patent, in compliance with 35 U.S.C § 287(a).

54.     Upon information and belief, RetailMeNot knew the '923 Patent existed while committing the foregoing infringing acts, thereby willfully, wantonly, and deliberately infringing the '923 Patent.  PayPal's damages should be trebled pursuant to 35 U.S.C. § 284 because of RetailMeNot's willful infringement of the '923 Patent.

55.     Upon information and belief, the acts of infringement by RetailMeNot have been with the knowledge of the '923 Patent and are willful, wanton, and deliberate, thus rendering this action "exceptional" within the meaning of 35 U.S.C. § 285 and entitling RetailMeNot to its reasonable attorney's fees and litigation expenses.

56.     The acts of infringement by RetailMeNot will continue unless enjoined by this Court.

57.     PayPal has been and will continue to be irreparably harmed and damaged by RetailMeNot's acts of infringement of the '923 Patent and has no adequate remedy at law.

## COUNT TWO:  INFRINGEMENT OF U.S. PATENT NO. 8,909,248

58.     Plaintiff hereby incorporates by reference its allegations contained in paragraphs 1 through 57 of this Complaint as though fully set forth herein.

59.     Upon information and belief, RetailMeNot has infringed and continues to infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '248 Patent pursuant to 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling in the United States, and/or importing into the United States, at least the Accused Products.  Upon information and belief, RetailMeNot's infringement pursuant to 35 U.S.C. § 271(a) is ongoing.

60.     For example, on information and belief, RetailMeNot's Website and Mobile Application, used by RetailMeNot and/or sold and offered for sale by RetailMeNot, infringe claim 1 of the '248 Patent; this claim recites:

A method comprising:

receiving a task on a mobile device;

associating, using the mobile device, the task with a physical location;

generating, automatically on the mobile device, a geofence around the physical location associated with the task;

tracking a current location of the mobile device relative to the geofence; and

generating an alert associated with the task when the current location is within the geofence.

61.     On information and belief, RetailMeNot's Mobile Application and Website are configured to receive a task on a mobile device, associate the task with a physical location, and generate, automatically on the mobile device, a geofence around the physical location associated with the task.  RetailMeNot's Mobile Application and Website track a current location of the mobile device relative to the geofence, and generate an alert associated with the task when the current location is within the geofence.  For example, on information and belief, the RetailMeNot Mobile Application is configured to generate an alert associated with a location-based notification when a mobile device on which the Mobile Application is installed is located within a geographic area associated with the location-based notification.  *See*, *e.g.*, https://www.retailmenot.com/corp/solutions/ (last accessed April 17, 2020).





62.     Furthermore, on information and belief, RetailMeNot's Website includes a "Near Me" feature configured to display an alert corresponding to a location-based promotion when a mobile device on which the Website is being viewed is located within a geographic area associated with a promotion.  *See*, *e.g.*, https://www.retailmenot.com/near-me (last accessed April 17, 2020).



63.     Furthermore, on information and belief, RetailMeNot has induced infringement of the aforementioned claims of the '248 Patent pursuant to 35 U.S.C. § 271(b), by actively and knowingly inducing, directing, causing, and encouraging others, including, but not limited to, their affiliates, merchant customers, consumer end users, and/or software developers, to directly infringe the '248 Patent through making, using, selling, and/or offering to sell in the United States, and/or importing into the United States, RetailMeNot's Accused Products, with the specific intent to encourage such infringement, and knowing that the induced acts constitute patent infringement. RetailMeNot's inducement includes, among other things, providing instructions, manuals, and technical assistance relating to the installation, use, sign up, set up, operation, maintenance, and other support of RetailMeNot's Accused Products that induce its affiliates, merchant customers, consumer end users, and/or software developers to directly infringe the '248 Patent.  RetailMeNot also induces acts of infringement through its social media pages, such as on Instagram, Facebook, Twitter, and Pinterest. RetailMeNot has actual knowledge of the '248 Patent at least as of service

of this Complaint.   Upon information and belief, RetailMeNot's inducement of infringement pursuant to 35 U.S.C. § 271(b) is ongoing.

64.   RetailMeNot has committed the foregoing infringing activities without license from PayPal and, upon information and belief, with notice of the '248 Patent, including through virtual marking (*see*  https://www.paypal.com/us/webapps/mpp/ua/patent-page  (last accessed April 17, 2020)) related to PayPal products or services that use or used the technology claimed in the '248 Patent, in compliance with 35 U.S.C § 287(a).

65.   Upon information and belief, RetailMeNot knew the '248 Patent existed while committing the foregoing infringing acts, thereby willfully, wantonly, and deliberately infringing the '248 Patent.   PayPal's damages should be trebled pursuant to 35 U.S.C. § 284 because of RetailMeNot's willful infringement of the '248 Patent.

66.   Upon information and belief, the acts of infringement by RetailMeNot have been with the knowledge of the '248 Patent and are willful, wanton, and deliberate, thus rendering this action "exceptional" within the meaning of 35 U.S.C. § 285 and entitling RetailMeNot to its reasonable attorney's fees and litigation expenses.

67.   The acts of infringement by RetailMeNot will continue unless enjoined by this Court.

68.   PayPal has been and will continue to be irreparably harmed and damaged by RetailMeNot's acts of infringement of the '248 Patent and has no adequate remedy at law.

### COUNT THREE:  INFRINGEMENT OF U.S. PATENT NO. 7,659,905

69.   PayPal hereby incorporates by reference its allegations contained in paragraphs 1 through 68 of this Complaint as though fully set forth herein.

70.     Upon information and belief, RetailMeNot has infringed and continues to infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '905 Patent pursuant to 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling in the United States, and/or importing into the United States, at least the Accused Products.   Upon information and belief, RetailMeNot's infringement pursuant to 35 U.S.C. § 271(a) is ongoing.

71.     For example, on information and belief, RetailMeNot's Website, used by RetailMeNot and/or sold and offered for sale by RetailMeNot, infringes claim 6 of the '905 Patent; this claim recites:

> A method of pre-fetching in a network, the method including:
>
> receiving a request from a user to display a first web page to the user, the first web page being upstream of other web pages in a page flow determined based on an observation of a user navigation;
>
> transmitting the first web page to a user device to be viewed by the user; and
>
> transmitting at least one of the other web pages to the user device to be stored in a memory device before a request is received from the user to view the other web pages.

72.     On information and belief, RetailMeNot's Website implements methods to pre-fetch data such that, in responding the user requests, it transmits a first web page to the user device and transmits at least one other web page to be stored in memory before a request is received to view the other page.   For example, on information and belief, when a user searches for "pizza deals," RetailMeNot's Website returns search results and related media (*e.g.*, images, JavaScript files, XHR and HTML documents, code objects), some of which are pre-fetched.   *See, e.g.*, https://www.retailmenot.com (last accessed December 9, 2019).



73.    On information and belief, the first web page is upstream of other web pages in a page flow determined by an observation of a user navigation.  For example, on information and belief, when a user searches for "pizza deals" on RetailMeNot's Website, the Website returns all the results (*e.g.*, 61 offers) across three pages with up to 24 offers per page.  Even when the user views the first page, search results for pages 2 and 3 are pre-fetched before the user requests to advance to the next page, as evidenced by at least script #_NEXT_DATA.   *See*, *e.g.*, https://www.retailmenot.com/s/pizza%2520deals?/ (last accessed December 9, 2019).



74.    Furthermore, on information and belief, RetailMeNot has induced infringement of the aforementioned claims of the '905 Patent pursuant to 35 U.S.C. § 271(b), by actively and knowingly inducing, directing, causing, and encouraging others, including, but not limited to, their affiliates, merchant customers, consumer end users, and/or software developers, to directly infringe the '905 Patent through making, using, selling, and/or offering to sell in the United States, and/or importing into the United States, RetailMeNot's Accused Products, with the specific intent to encourage such infringement, and knowing that the induced acts constitute patent infringement. RetailMeNot's inducement includes, among other things, providing instructions, manuals, and technical assistance relating to the installation, use, sign up, set up, operation, maintenance, and other support of RetailMeNot's Accused Products that induce its affiliates, merchant customers, consumer end users, and/or software developers to directly infringe the '905 Patent.  RetailMeNot also induces acts of infringement through its social media pages, such as on Instagram, Facebook, Twitter, and Pinterest. RetailMeNot has actual knowledge of the '905 Patent at least as of service

of this Complaint.   Upon information and belief, RetailMeNot's inducement of infringement pursuant to 35 U.S.C. § 271(b) is ongoing.

75.   RetailMeNot has committed the foregoing infringing activities without license from PayPal and, upon information and belief, with notice of the '905 Patent, including through virtual marking (*see*  https://www.paypal.com/us/webapps/mpp/ua/patent-page  (last accessed April 17, 2020)) related to PayPal products or services that use or used the technology claimed in the '905 Patent, in compliance with 35 U.S.C § 287(a).

76.   Upon information and belief, RetailMeNot knew the '905 Patent existed while committing the foregoing infringing acts, thereby willfully, wantonly, and deliberately infringing the '905 Patent.   PayPal's damages should be trebled pursuant to 35 U.S.C. § 284 because of RetailMeNot's willful infringement of the '905 Patent.

77.   Upon information and belief, the acts of infringement by RetailMeNot have been with the knowledge of the '905 Patent and are willful, wanton, and deliberate, thus rendering this action "exceptional" within the meaning of 35 U.S.C. § 285 and entitling RetailMeNot to its reasonable attorney's fees and litigation expenses.

78.   The acts of infringement by RetailMeNot will continue unless enjoined by this Court.

79.   PayPal has been and will continue to be irreparably harmed and damaged by RetailMeNot's acts of infringement of the '905 Patent and has no adequate remedy at law.

## COUNT FOUR:  INFRINGEMENT OF U.S. PATENT NO. 6,917,961

80.   PayPal hereby incorporates by reference its allegations contained in paragraphs 1 through 79 of this Complaint as though fully set forth herein.

81.     Upon information and belief, RetailMeNot has infringed and continues to infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '961 Patent pursuant to 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling in the United States, and/or importing into the United States, at least the Accused Products.   Upon information and belief, RetailMeNot's infringement pursuant to 35 U.S.C. § 271(a) is ongoing.

82.     For example, on information and belief, RetailMeNot's Website, used by RetailMeNot and/or sold and offered for sale by RetailMeNot, infringes claim 1 of the '961 Patent; this claim recites:

A method of processing user data from a user computer, comprising:

communicating to the user computer via the Internet a Web page including a first dialog box having a data entry field, wherein the Web page is configured to replace the first dialog box with a second dialog box while display of a remainder of the Web page at the user computer is not changed in response to an indication by a user that user data has been entered into the data entry field of the first dialog box;

receiving from the user computer user data entered into the data entry field of the first dialog box; and

selecting response data corresponding to the user data, and

including the response data in the second dialog box, the second dialog box replacing the first dialog box without changing display of the remainder of the Web page at the user computer.

83.     On information and belief, RetailMeNot's Website uses a method to process user data from a user computer by communicating to the user computer via the Internet a Web page including a first dialog box having a data entry field, and receiving from the user computer user data entered into the data entry field of the first dialog box.  For example, on information and belief, RetailMeNot's Website collects and processes user data (*e.g.*, e-mail address, phone number) through at least the Cash Back and "Send As" features.  *See, e.g.*, https://www.retailmenot.com/view/lululemon.com?u=RMGKBNRIJVGPLNVG6BGLNJNKQQ (last accessed April 17, 2000); https://www.retailmenot.com/?c=2675730&

redemptionChannel=online (last accessed April 17, 2000); https://www.retailmenot.com (last accessed April 17, 2020).







84.     On information and belief, RetailMeNot's Website also selects response data corresponding to the user data and includes the response data in a second dialog box which is configured to replace the first dialog box without changing display of the remainder of the Web page at the user computer in response to an indication by the user that the user data has been entered into the data entry field of the first dialog box.  For example, on information and belief, when a user enters an email address or phone number and submits the form using the corresponding buttons (*e.g.*, "Subscribe," "Join and Earn 4%," "Send"), a confirmation message related to the input data is returned to the user in the same dialog box without changing the display of the remainder of the page.  *See, e.g.*, https://www.retailmenot.com/view/lululemon.com?u=RMGKBNRIJVGPLNVG6BGLNJNKQQ        (last     accessed     April     17,     2000); https://www.retailmenot.com/?c=2675730&redemptionChannel=online (last accessed April 17, 2000); https://www.retailmenot.com (last accessed April 17, 2020).





Sending a link to the mobile app



85.     Furthermore, upon information and belief, RetailMeNot has induced infringement of the aforementioned claims of the '961 Patent pursuant to 35 U.S.C. § 271(b), by actively and knowingly inducing, directing, causing, and encouraging others, including, but not limited to, their affiliates, merchant customers, consumer end users, and/or software developers, to directly infringe the '961 Patent through making, using, selling, and/or offering to sell in the United States, and/or importing into the United States, RetailMeNot's Accused Products, with the specific intent to encourage such infringement, and knowing that the induced acts constitute patent infringement. RetailMeNot's inducement includes, among other things, providing instructions, manuals, and technical assistance relating to the installation, use, sign up, set up, operation, maintenance, and other support of RetailMeNot's Accused Products that induce its affiliates, merchant customers, consumer end users, and/or software developers to directly infringe the '961 Patent. RetailMeNot also induces acts of infringement through its social media pages, such as on Instagram, Facebook, Twitter, and Pinterest. RetailMeNot has actual knowledge of the '961 Patent at least as of service of this Complaint.   Upon information and belief, RetailMeNot's inducement of infringement pursuant to 35 U.S.C. § 271(b) is ongoing.

86.     RetailMeNot has committed the foregoing infringing activities without license from PayPal and, upon information and belief, with notice of the '961 patent, including through virtual marking (*see*   https://www.paypal.com/us/webapps/mpp/ua/patent-page   (last accessed April 17, 2020)) related to PayPal products or services that use or used the technology claimed in the '961 Patent, in compliance with 35 U.S.C § 287(a).

87.     Upon information and belief, RetailMeNot knew the '961 Patent existed while committing the foregoing infringing acts, thereby willfully, wantonly, and deliberately infringing

the '961 Patent.  PayPal's damages should be trebled pursuant to 35 U.S.C. § 284 because of RetailMeNot's willful infringement of the '961 Patent.

88.     Upon information and belief, the acts of infringement by RetailMeNot have been with the knowledge of the '961 Patent and are willful, wanton, and deliberate, thus rendering this action "exceptional" within the meaning of 35 U.S.C. § 285 and entitling RetailMeNot to its reasonable attorney's fees and litigation expenses.

89.     The acts of infringement by RetailMeNot will continue unless enjoined by this Court.

90.     PayPal has been and will continue to be irreparably harmed and damaged by RetailMeNot's acts of infringement of the '961 Patent and has no adequate remedy at law.

## COUNT FIVE:  INFRINGEMENT OF U.S. PATENT NO. 7,693,937

91.      PayPal hereby incorporates by reference its allegations contained in paragraphs 1 through 90 of this Complaint as though fully set forth herein.

92.     Upon information and belief, RetailMeNot has infringed and continues to infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '937 Patent pursuant to 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling in the United States, and/or importing into the United States, at least the Accused Products.   Upon information and belief, RetailMeNot's infringement pursuant to 35 U.S.C. § 271(a) is ongoing

93.     For example, on information and belief, RetailMeNot's Website, used by RetailMeNot and/or sold and offered for sale by RetailMeNot, infringes claim 1 of the '937 Patent; this claim recites:

A method comprising:

providing a web page at a user computer, the web page including a displayable component to present information, the displayable component being a web browser readable code component including dynamically selectable characteristics, content

of the displayable component being displayable concurrently with a remainder of the web page, the displayable component being useable with a plurality of different web browsers provided by a plurality of different web browser providers;

receiving an input; and

changing the content of the displayable component in response to the received input without changing the remainder of the web page, without reloading the remainder of the web page, and without redirecting a web browser away from the web page, the changed content of the displayable component being displayable concurrently with the remainder of the web page.

94.    On information and belief, RetailMeNot's Website uses a method to process user data from a user computer by receiving user input from a web page that includes a displayable component that includes dynamically selectable characteristics and that includes content that is displayable with the remainder of the web page.   For example, on information and belief, RetailMeNot's Website collects and processes user data (*e.g.*, e-mail address, phone number) through at least the Cash Back and "Send As" features.   *See, e.g.*, https://www.retailmenot.com/view/lululemon.com?u=RMGKBNRIJVGPLNVG6BGLNJNKQQ (last accessed April 17, 2000);   https://www.retailmenot.com/?c=2675730&redemptionChannel=online (last accessed April 17, 2000);   https://www.retailmenot.com (last accessed April 17, 2020).







95.    On information and belief, RetailMeNot's Website changes the content of the displayable component in response to the received input without changing the remainder of the web page, without reloading the remainder of the web page, and without redirecting the web browser away from the web page such that the changed content is displayable concurrently with the remainder of the page.  For example, on information and belief, when a user enters an e-mail address or phone number and submits the form using the corresponding buttons (*e.g.*, "Subscribe,"

"Join and Earn 4%," "Send"), a confirmation message related to the input data is returned to the user in the same displayable component without changing the display of the remainder of the page, reloading the page, or redirecting the browser away from the page. *See, e.g.*, https://www.retailmenot.com/view/lululemon.com?u=RMGKBNRIJVGPLNVG6BGLNJNKQQ (last accessed April 17, 2000); https://www.retailmenot.com/?c=2675730&redemptionChannel=online (last accessed April 17, 2000); https://www.retailmenot.com (last accessed April 17, 2020).







96.     On information and belief, the displayable component is usable with multiple browsers provided by different web browser providers.  RetailMeNot's Cash Back and "Send As" features work on at least Microsoft's Edge and Internet Explorer, Apple's Safari, Google's Chrome, and Mozilla's Firefox.

97.     Furthermore, on information and belief, RetailMeNot has induced infringement of the aforementioned claims of the '937 Patent pursuant to 35 U.S.C. § 271(b), by actively and knowingly inducing, directing, causing, and encouraging others, including, but not limited to, their affiliates, merchant customers, consumer end users, and/or software developers, to directly infringe the '937 Patent through making, using, selling, and/or offering to sell in the United States, and/or importing into the United States, RetailMeNot's Accused Products, with the specific intent to encourage such infringement, and knowing that the induced acts constitute patent infringement. RetailMeNot's inducement includes, among other things, providing instructions, manuals, and technical assistance relating to the installation, use, sign up, set up, operation, maintenance, and other support of RetailMeNot's Accused Products that induce its affiliates, merchant customers, consumer end users, and/or software developers to directly infringe the '937 Patent.  RetailMeNot also induces acts of infringement through its social media pages, such as on Instagram, Facebook, Twitter, and Pinterest. RetailMeNot has actual knowledge of the '937 Patent at least as of service

of this Complaint.   Upon information and belief, RetailMeNot's inducement of infringement pursuant to 35 U.S.C. § 271(b) is ongoing.

98.    RetailMeNot has committed the foregoing infringing activities without license from PayPal and, upon information and belief, with notice of the '937 Patent, including through virtual  marking  (see   https://www.paypal.com/us/webapps/mpp/ua/patent-page  (last  accessed April 17, 2020)) related to PayPal products or services that use or used the technology claimed in the '937 Patent, in compliance with 35 U.S.C § 287(a).

99.    Upon information and belief, RetailMeNot knew the '937 Patent existed while committing the foregoing infringing acts, thereby willfully, wantonly, and deliberately infringing the '937 Patent.  PayPal's damages should be trebled pursuant to 35 U.S.C. § 284 because of RetailMeNot's willful infringement of the '937 Patent.

100.    Upon information and belief, the acts of infringement by RetailMeNot have been with the knowledge of the '937 Patent and are willful, wanton, and deliberate, thus rendering this action "exceptional" within the meaning of 35 U.S.C. § 285 and entitling RetailMeNot to its reasonable attorney's fees and litigation expenses.

101.    The acts of infringement by RetailMeNot will continue unless enjoined by this Court.

102.    PayPal has been and will continue to be irreparably harmed and damaged by RetailMeNot's acts of infringement of the '937 Patent and has no adequate remedy at law.

### COUNT SIX:  INFRINGEMENT OF U.S. PATENT NO. 9,053,514

103.     PayPal hereby incorporates by reference its allegations contained in paragraphs 1 through 102 of this Complaint as though fully set forth herein.

104.    Upon information and belief, RetailMeNot has infringed and continues to infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '514 Patent pursuant to 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling in the United States, and/or importing into the United States, at least the Accused Products.   Upon information and belief, RetailMeNot's infringement pursuant to 35 U.S.C. § 271(a) is ongoing.

105.    For example, on information and belief, RetailMeNot's Website, used by RetailMeNot and/or sold and offered for sale by RetailMeNot, infringes claim 1 of the '514 Patent; this claim recites:

A promotion system that supports promotion services between a plurality of buyers and a plurality of sellers in a communication network, the promotion system comprising:

a promotion management system having a seller interface, the seller interface being used by both a first seller and a second seller respectively via a first seller's computer and a second seller's computer to correspondingly register a first promotion for a first item and a second promotion for a second item;

the promotion management system receiving from the first seller's computer, first information regarding one or both of the first seller and the first item, the first information comprising a first dispensing criterion, having a first configuration, and having first content based upon input of a first seller;

the promotion management system receiving from the second seller's computer, second information regarding one or both of the second seller and the second item, the second information comprising a second dispensing criterion, having a second configuration, and having second content based upon input of a second seller;

the promotion management system converting at least a portion of one of the first promotion or first dispensing criterion or the second promotion or second dispensing criterion from its respective configuration to a local configuration;

the promotion management system having a buyer interface accessible by a buyer computer, the buyer interface comprising:

a browsing portion enabling a buyer using the buyer computer to browse a plurality of promotions comprising the first promotion and the second promotion;

a search portion enabling the buyer to search the plurality of promotions; and

a results portion to present one or both of the first promotion and the second promotion.

106.    On information and belief, RetailMeNot provides a promotion system that supports promotion services between a plurality of buyers and a plurality of sellers in a communication network.  The RetailMeNot promotion system includes a seller interface that is used by first and second sellers respectively via first and second sellers' computers to correspondingly register a first promotion for a first item and a second promotion for a second item.  The promotion management system receives from the first seller's computer first information comprising a first dispensing criterion, having a first configuration, and having first content based upon input of a first seller.  The promotion management system receives from the second seller's computer second information comprising a second dispensing criterion, having a second configuration, and having second content based upon input of a second seller.  The promotion management system converts at a least a portion of the first promotion or first dispensing criterion or the second promotion or second dispensing criterion from its respective configuration to a local configuration.

107.    On information and belief, the RetailMeNot promotion system also includes a buyer interface accessible by a buyer computer.  The buyer interface has a browsing portion enabling a buyer using the buyer computer to browse a plurality of promotions comprising the first promotion and the second promotion.  The buyer interface also includes a search portion enabling a buyer to search the plurality of promotions, and includes a results portion to present one or both of the first promotion and the second promotion.

108.    For example, on information and belief, RetailMeNot is a search system having a seller interface used by first and second sellers through their respective computers to register corresponding promotions for items.  *See*, *e.g.*, https://www.retailmenot.com/corp/about/ (last accessed April 17, 2020); https://www.retailmenot.com/submit (last accessed April 17, 2020); https://www.getfeedback.com/r/0UwupCKR/ (last accessed April 17, 2020).







109.   On information and belief, various affiliate networks associated with RetailMeNot register promotions for various items on behalf of sellers.  On information and belief, such affiliate networks include, but are not limited to, CJ Affiliate, ShareASale, Rakuten, Linkshare, Pepperjam Network, Impact Radius, Affiliate Window, adsrvrs.org and/or Taboola.   On information and belief, the information submitted by sellers and affiliate networks to register promotions with RetailMeNot's promotion system includes information regarding the seller and their products, dispensing criterion associated with the promotion, and content associated with the promotion. Different sellers and affiliate networks submit information to RetailMeNot in different formats, which RetailMeNot converts to a uniform format to, for example, enable browsing and searching of promotions by buyers.  *See*, *e.g.*, https://www.retailmenot.com/coupons/travel (last accessed April 17, 2020).



110.    On information and belief, the RetailMeNot promotion system further includes a buyer interface accessible by a buyer computer, including a Website buyer interface, a Mobile Application buyer interface, and a Browser Extension buyer interface.  In each case, the browser interface includes a browsing portion, searching portion, and results portion for outputting promotions to buyers at their respective computers.  *See*, *e.g.*, https://www.retailmenot.com/ (last accessed April 17, 2020).







111.     Furthermore, on information and belief, RetailMeNot has induced infringement of the aforementioned claims of the '514 Patent pursuant to 35 U.S.C. § 271(b), by actively and

knowingly inducing, directing, causing, and encouraging others, including, but not limited to, their affiliates, merchant customers, consumer end users, and/or software developers, to directly infringe the '514 Patent through making, using, selling, and/or offering to sell in the United States, and/or importing into the United States, RetailMeNot's Accused Products, with the specific intent to encourage such infringement, and knowing that the induced acts constitute patent infringement. RetailMeNot's inducement includes, among other things, providing instructions, manuals, and technical assistance relating to the installation, use, sign up, set up, operation, maintenance, and other support of RetailMeNot's Accused Products that induce its affiliates, merchant customers, consumer end users, and/or software developers to directly infringe the '514 Patent. RetailMeNot also induces acts of infringement through its social media pages, such as on Instagram, Facebook, Twitter, and Pinterest. RetailMeNot has actual knowledge of the '514 Patent at least as of service of this Complaint.  Upon information and belief, RetailMeNot's inducement of infringement pursuant to 35 U.S.C. § 271(b) is ongoing.

112.    RetailMeNot has committed the foregoing infringing activities without license from PayPal and, upon information and belief, with notice of the '514 Patent.

113.    Upon information and belief, RetailMeNot knew the '514 Patent existed while committing the foregoing infringing acts, thereby willfully, wantonly, and deliberately infringing the '514 Patent.  PayPal's damages should be trebled pursuant to 35 U.S.C. § 284 because of RetailMeNot's willful infringement of the '514 Patent.

114.    Upon information and belief, the acts of infringement by RetailMeNot have been with the knowledge of the '514 Patent and are willful, wanton, and deliberate, thus rendering this action "exceptional" within the meaning of 35 U.S.C. § 285 and entitling RetailMeNot to its reasonable attorney's fees and litigation expenses.

115.    The acts of infringement by RetailMeNot will continue unless enjoined by this Court.

116.    PayPal has been and will continue to be irreparably harmed and damaged by RetailMeNot's acts of infringement of the '514 Patent and has no adequate remedy at law.

### COUNT SEVEN:  INFRINGEMENT OF U.S. PATENT NO. 9,082,153

117.    PayPal hereby incorporates by reference its allegations contained in paragraphs 1 through 116 of this Complaint as though fully set forth herein.

118.    Upon information and belief, RetailMeNot has infringed and continues to infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '153 Patent pursuant to 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling in the United States, and/or importing into the United States, at least the Accused Products.   Upon information and belief, RetailMeNot's infringement pursuant to 35 U.S.C. § 271(a) is ongoing.

119.    For example, on information and belief, RetailMeNot's Website, used by RetailMeNot and/or sold and offered for sale by RetailMeNot, infringes claim 1 of the '153 Patent; this claim recites:

> A searching system supporting a plurality of buyer computers used by a corresponding plurality of buyers, the searching system comprising:
>
> a server system communicatively coupled to:
>
> a first seller's computer used by a first seller to support promotions for selling a first plurality of products, each of the first plurality of products having associated first product data and first promotion information stored in a first configuration, the first seller having first web page information available on the Internet;
>
> a second seller's computer used by a second seller to support promotions for selling a second plurality of products, each of the second plurality of products having associated second product data and second promotion information stored in a second configuration, the second seller having second web page information available on the Internet; and
>
> the plurality of buyer computers, wherein:
>
> the server system accesses:

a first data set comprising both the first web page information and the second web page information;

a second data set comprising the first product data, the first promotion information, the second product data, and the second promotion information;

the server system converts at least a portion of one of the first product data, the second product data, the first promotion information or the second product information from its respective configuration to a local configuration;

the server system accesses the associated first product data and the associated second product data, the first product data including a first promotional amount and a first service charge amount, the second product data including a second promotional amount and a second service charge amount; and

the server system responds to a user query received from one of the plurality of buyer computers by delivering selections from the associated first product data and the associated second product data to the one of the plurality of buyer computers for display to a corresponding user.

120.    On information and belief, RetailMeNot operates a search system supporting a plurality of buyer computers used by a corresponding plurality of buyers.  The RetailMeNot searching system includes a server system communicatively coupled to a first seller's computer used by a first seller to support promotions for selling a first plurality of products, each of the first plurality of products having associated first product data and first promotion information stored in a first configuration, the first seller having first web page information available on the Internet, and communicatively coupled to a second seller's computer used by a second seller to support promotions for selling a second plurality of products, each of the second plurality of products having associated second product data and second promotion information stored in a second configuration, the second seller having second web page information available on the Internet.

121.    On information on belief, the server system further accesses a first data set comprising both the first web page information and the second web page information, and a second data set comprising the first product data, the first promotion information, the second product data, and the second promotion information.  The server system converts at least a portion of one of the first product data, the second product data, the first promotion information or the second product

information from its respective configuration to a local configuration.  Further, on information and belief, the server system accesses the associated first product data and the associated second product data, the first product data including a first promotional amount and a first service charge amount, the second product data including a second promotional amount and a second service charge amount.

122.    On information and belief, the server system responds to a user query received from one of a plurality of buyer computers by delivering selections from the associated first product data and the associated second product data to the one of the plurality of buyer computers for display to a corresponding user.

123.    For example, on information and belief, RetailMeNot is a searching system supporting buyer computers to search for promotions at various merchants.  *See, e.g.,* https://www.retailmenot.com/corp/about/ (last accessed April 17, 2020).



124.    The RetailMeNot searching system includes a server system coupled to seller computers and enabling those sellers to provide product and promotion information from their

respective computers.   *See*, *e.g.*, https://www.retailmenot.com/submit (last accessed April 17, 2020).



125.    On information and belief, various affiliate networks associated with RetailMeNot provide product and promotion information for various items on behalf of sellers.  On information and belief, such affiliate networks include, but are not limited to, CJ Affiliate, ShareASale, Rakuten, Linkshare, Pepperjam Network, Impact Radius, Affiliate Window, adsrvrs.org and/or Taboola.  Different sellers and affiliate networks submit information to RetailMeNot in different formats, which RetailMeNot converts to a uniform format to, for example, enable browsing and searching of promotions by buyers.  *See*, *e.g.*, https://www.retailmenot.com/coupons/travel (last accessed April 17, 2020).



126.    On information and belief, the server system of the RetailMeNot searching system accesses product data for various products, including promotional amounts and service charge amounts associated with the promotions.  *See, e.g.*, https://www.retailmenot.com/corp/advertising/ (last accessed April 17, 2020).

**5.0 Fees and Invoicing.**  The total fee due from Advertiser to RetailMeNot for completion of the Advertising Services is as set forth in the Order.  RetailMeNot shall invoice advertiser once for the fee upon completion of the Advertising Services.  Such fee shall be payable in full within thirty (30) days of Advertiser's receipt of RetailMeNot's invoice.  If Advertiser fails to timely pay fees due hereunder, RetailMeNot may, in its sole discretion, terminate this Agreement or suspend performance of the Advertising Services under any active Order. Any amounts not paid by Advertiser within thirty (30) days of Advertiser's receipt of a properly submitted invoice are subject to a late fee and bear interest from the due date at the lesser of 1.5% per month or the maximum rate permitted by applicable law.

127.    On information and belief, the RetailMeNot searching system includes a plurality of buyer computers configured to submit queries to the RetailMeNot server system through a Website buyer interface, a Mobile Application buyer interface, and a Genie browser extension buyer interface.  The server system responds to user queries received from buyer computers through these interfaces by delivering selections from the various product data to the buyer computers for display to a buyer.  *See*, *e.g.*, https://www.retailmenot.com/ (last accessed April 17, 2020).







128.    Furthermore, on information and belief, RetailMeNot has induced infringement of the aforementioned claims of the '153 Patent pursuant to 35 U.S.C. § 271(b), by actively and knowingly inducing, directing, causing, and encouraging others, including, but not limited to, their affiliates, merchant customers, consumer end users, and/or software developers, to directly infringe the '153 Patent through making, using, selling, and/or offering to sell in the United States, and/or importing into the United States, RetailMeNot's Accused Products, with the specific intent to encourage such infringement, and knowing that the induced acts constitute patent infringement. RetailMeNot's inducement includes, among other things, providing instructions, manuals, and technical assistance relating to the installation, use, sign up, set up, operation, maintenance, and other support of RetailMeNot's Accused Products that induce its affiliates, merchant customers, consumer end users, and/or software developers to directly infringe the '153 Patent.  RetailMeNot also induces acts of infringement through its social media pages, such as on Instagram, Facebook, Twitter, and Pinterest. RetailMeNot has actual knowledge of the '153 Patent at least as of service of this Complaint.   Upon information and belief, RetailMeNot's inducement of infringement pursuant to 35 U.S.C. § 271(b) is ongoing.

129.    RetailMeNot has committed the foregoing infringing activities without license from PayPal and, upon information and belief, with notice of the '153 Patent.

130.    Upon information and belief, RetailMeNot knew the '153 Patent existed while committing the foregoing infringing acts, thereby willfully, wantonly, and deliberately infringing the '153 Patent.  PayPal's damages should be trebled pursuant to 35 U.S.C. § 284 because of RetailMeNot's willful infringement of the '153 Patent.

131.    Upon information and belief, the acts of infringement by RetailMeNot have been with the knowledge of the '153 Patent and are willful, wanton, and deliberate, thus rendering this

action "exceptional" within the meaning of 35 U.S.C. § 285 and entitling RetailMeNot to its reasonable attorney's fees and litigation expenses.

132.    The acts of infringement by RetailMeNot will continue unless enjoined by this Court.

133.    PayPal has been and will continue to be irreparably harmed and damaged by RetailMeNot's acts of infringement of the '153 Patent and has no adequate remedy at law.

### <u>PRAYER FOR RELIEF</u>

WHEREFORE, PayPal prays for judgment in its favor against RetailMeNot, granting PayPal the following relief:

A.    Entry of judgment in favor of PayPal against RetailMeNot on all counts;

B.    Entry of judgment that RetailMeNot has infringed one or more of the Patents-in-Suit;

C.    An order permanently enjoining RetailMeNot together with their officers, directors, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them from infringing one or more of the Patents-in-Suit;

D.    Award of compensatory damages adequate to compensate PayPal for RetailMeNot's infringement of the Patents-in-Suit, in no less than a reasonable royalty trebled as provided by 35 U.S.C. § 284;

E.    An accounting of RetailMeNot's infringing activities through trial and judgment;

F.    PayPal's reasonable fees for expert witnesses and attorneys, as provided by 35 U.S.C. § 285;

G.    PayPal's costs;

H.    Pre-judgment and post-judgment interest on PayPal's award; and

I.      All such other and further relief as the Court deems just or equitable.

## **DEMAND FOR JURY TRIAL**

PayPal hereby demands trial by jury in this action of all claims so triable.

Dated: April 28, 2020

Respectfully Submitted,

**FISH & RICHARDSON P.C.**

By: */s/ David M. Hoffman*
_____

David M. Hoffman
TX Bar No. 24046084
hoffman@fr.com
111 Congress Avenue, Suite 810
Austin, TX 78701
Telephone: (512) 472-5070
Facsimile: (512) 320-8935

Indranil Mukerji *(pro hac vice to be filed)*
mukerji@fr.com
Stephen Marshall *(pro hac vice to be filed)*
smarshall@fr.com
1000 Maine Avenue SW, Suite 1000
Washington, DC 20024
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Juanita Brooks
brooks@fr.com
12390 El Camino Real, Suite 100
San Diego, CA  92150
Telephone: (858) 678-5070
Facsimile: (858) 378-5099

Katherine Reardon *(pro hac vice to be filed)*
kreardon@fr.com
7 Time Square, 20th Floor
New York, NY 10036
Telephone: (212) 765-5070
Facsimile: (212) 258-2291

COUNSEL FOR PLANTIFF,
PAYPAL, INC.